MAGALEI LOGOVII, TUIA'ANA MOI,
and the MAGALEI FAMILY, Plaintiffs

v.

ASIFOA ATUALEVAO, Defendants


ELIAPO OLOAVA TAUVELA, FUESINA D. PURCELL,
SEGAULA R. ROBERTS, LUAUMA V. VAL MOANANU, and
MO'I TUIA'ANA, Objector/Plaintiffs

v.

ASIFOA AND CHILDREN, Claimants/Defendants


ASIFOA ATUALEVAO, Objector/Plaintiff

v.

OLOAVA SENE TAUVELA, Claimant/Defendant


R.S. TAGO SEVA'AETASI, Intervenor

High Court of American Samoa
Land and Titles Division

LT No. 23-88
LT No. 21-88
LT No. 34-85

May 13, 1991

Before REES, Associate Justice, AFUOLA, Associate Judge, LOGOAI, Associate Judge.

Counsel: For Plaintiffs Magalei Logovii, Tuia'ana Moi, and the Magalei
Family, Tau'ese P.F. Sunia
For Defendant Asifoa Atualevao, Claimants/Defendants Asifoa
and Children, and Objector/Plaintiff Asifoa Atualevao,
Charles V. Ala'ilima
For Claimant/Defendant Oloava Sene Tauvela,
Togiola T.A. Tulafono
R.S. Tago Seva'aetasi, Pro Se

These three consolidated cases involve part of the land called
Tafeta in the Village of Faleniu, on the mountainside along the road to
A'oloau and A'asu Fou.

In 1985 Oloava Sene Tauvela offered two parcels of this land for
registration as the individually owned property of herself, her siblings,
and their late parents ("Tauvela & Teuila and children"). Asifoa
Atualevao objected, claiming that the land in question was communal
land of the Atualevao family.

In 1988, while the Tauvela case was still pending, Magalei and
Tuia'ana of Faleniu sued to enjoin the burial of a family member of
Asifoa Atualevao on adjacent land they claimed to belong to the Magalei
family.

In 1989 Asifoa offered a large tract of land, which overlapped the parcels claimed by Tauvela and which also apparently included the land involved in the burial dispute, as his own individually owned land (i.e., *not* as communal land of the Atualevao family), which he called "Malologa." Various people filed objections, including the Tauvela claimants and representatives of the Magalei/Tuia'ana family. The three cases were consolidated for trial.

We take judicial notice of the following prior cases concerning Tafeta, most of which involved some or all of the present parties: *Lualemana v. Tago*, 3 A.S.R. 43 (1953); *Magalei v. Tago*, LT No. 23-1955 (Dec. 30, 1955); *Galoia v. Lua*, 3 A.S.R. 245 (1956); *Filo v. Lualemana*, LT No. 43-1961 (Sept. 7, 1961); *Lualemana v. Filo*, LT No. 55-1961 (Dec. 11, 1961), *aff'd* 3 A.S.R. 642 (1961); *Magalei v. Lualemana*, 4 A.S.R. 242, *aff'd* 4 A.S.R. 849 (1962); and *Atualevao v. Magalei*, LT No. 1524-75 (Jan. 23, 1978).

## I. The Magalei/Tuia'ana Claim

From the records of the above-cited cases and from the testimony taken in the present case, it is clear that the land now in dispute is part of the large area called Tafeta that was cleared by the people of Faleniu and divided among the chiefs of that village in the early part of the present century, as recounted in *Magalei v. Lualemana*, *supra*. It further appears that the three parcels offered for registration by Asifoa and by the Tauvela claimants are within the part of Tafeta that was given to the Magalei/Tuia'ana family when the land was divided in or around 1922.[1]

---

[1] Counsel for Asifoa contended at trial that the land now in dispute is not within the land called Tafeta, which the Court has repeatedly held to have been cleared and settled by the Faleniu people in 1922, but is instead somewhat uphill from this land. The evidence for this proposition is Asifoa's own testimony that there were large trees on the land when he got there in the late 1940s.

Aside from the unlikelihood that the Faleniu people would have cut down every single, large tree when they cleared the land in 1922, there is abundant evidence that all the land now in dispute is within the land Tafeta, whose ownership has been adjudicated over and over again in the High Court. Moea'i, who owns the land just downhill, testified that his portion of Tafeta is not the part that is furthest uphill and that Tuia'ana owns the portion uphill from him. The evidence of Tuia'ana,

Although it appears that Tuia'ana is the matai who has been looking after this part of Tafeta on behalf of the extended Magalei/Tuia'ana family, we are not asked to adjudicate the rights of the various matai within that family as among themselves, and we express no opinion on this question.

## II. The Moea'i Claim

The Moea'i family, also of Faleniu, owns an adjacent part of Tafeta. The evidence is to the effect that the Moea'i part of Tafeta includes a 9.08-acre tract downhill from the land now in dispute, just on the other side of the houses belonging to intervenor R.S. Tago Seva'aetasi. This Moea'i tract appears to have been the location of the plantations of Filo, a man connected to the Moea'i family who was the successful litigant in LT Nos. 43-1961 and 55-1961, *supra*. Moea'i testified that the Magalei/Tuia'ana family own the part of Tafeta in the uphill (mauga or northwesterly) direction from his holdings. The three tracts offered for registration in the cases now before us are entirely within the Magalei/Tuia'ana portion and do not encroach the Moea'i parcel.

## III. The R.S. Tago Seva'aetasi Claim

Intervenor R.S. Tago Seva'aetasi came to this area just after World War II, in connection with his work for the government commission that was assessing war claims damages. He requested a place to live from the chiefs of Faleniu, and the chiefs designated a place for him to have a house and plantations. Later, however, Tago fell out with the chiefs of Faleniu, claiming that the land was part of A'oloau and that he had acquired the land he was living on through a family

---

Tago, and Tauvela also makes it clear that Tuia'ana has been exercising some sort of pule over this area at least since the 1940s.

Moreover, all parties, including Asifoa, agree that the house of Lua Mamoe which was involved in *Galoia v. Lua*, *supra* --- and which the Court held to be within Tafeta and subject to the pule of Tuia'ana --- was located only a few feet from where the Asifoa houses are now. The evidence is to the effect that Lua's house was just outside the land now in dispute, in an uphill direction toward A'olau. This places the presently disputed land squarely within Tafeta, not outside it and not on its fringes.

connection to Aʻoloau. *See Magalei v. Tago, supra.* In 1955 the Court held that Tago had entered onto the land by permission of the chiefs of Faleniu and that he had the right to remain on part of the land for seven years, after which the chiefs of Faleniu would have the right to evict him. *Id.*

In 1957, however, Tago was able to procure from two chiefs of Faleniu a purported deed to a large part of Tafeta. The deed purports to convey not only the land then occupied by Tago but also the areas occupied (then as now) by Asifoa and by the Tauvela claimants. A survey prepared by Tago, which he says reflects the land conveyed to him by the deed, overlaps the Asifoa parcel and one of the Tauvela parcels and appears to include houses belonging to Asifoa and Tauvela. Tago's testimony about the extent of his holdings, however, is to the effect that he does not claim the Asifoa and Tauvela houses.

In any event, there are numerous flaws in the deed. It conveys no particular land by reference to metes and bounds or other cognizable boundaries; it was not signed by Magalei or Tuiaʻana, whose family owned a large part of the area it purported to convey; it does not appear to have been approved by the Governor or the Land Commission, as required by statute for conveyances of communal land. A.S.C.A. §§ 37.0203-.0204. Nor, although the deed and an accompanying survey were filed for registration in the office of the Territorial Registrar, have they ever been offered for registration as the property of Tago in accordance with the procedures set forth in A.S.C.A. §§ 37.0101 et seq. The mere filing of a document with the Registrar, without compliance either with the procedures set forth in A.S.C.A. §§ 37.0101 et seq. for the registration of land or with those set forth in A.S.C.A. §§ 37.0201 et seq. for the conveyance of communal land, conveys no title.

The purported deed may have given Tago a license to continue living in the area where his houses are. This would depend on the circumstances, including whether the matai whose family owned the area where Tago's houses are gave his consent to the deed or to the underlying agreement. (The landowner may be Moeaʻi, who did sign the deed, or it may be Magalei or Tuiaʻana, who did not.) Tago has no legal interest, however, in the tracts now offered for registration by Tauvela or by Asifoa.

*IV. The Tauvela Claim*

The Tauvela claimants came to this area shortly after the end of the Second World War. Fred Lobendahn, a man who married into the family, had something to do with building the government road up the mountain; the Tauvela family is also connected to A'oloau, the village that had recently moved to the top of the mountain from its old location on the north shore. It appears that during the late 1940s and early 1950s, a number of ambitious and/or adventurous A'oloau people were spilling over onto the southern slope of the mountain toward the villages of Pava'ia'i and Faleniu.

This is by no means the first case in which the postwar migration from A'oloau has given rise to disputes between people of A'oloau and residents of other villages asserting traditional claims to the land along the mountainside. In the present case, however, the A'oloau people settled on land which was subject not just to vague general assertions of political dominion by neighboring villages, but to specific claims of ownership based on the pre-war settlement and division of Tafeta by the villagers of Faleniu. *See Magalei v. Lualemana, supra.* Although the Faleniu people had been required to leave during the War (1942-46) when the Marines occupied the area, this did not constitute an abandonment of the sort that might entitle strangers (who appear to have arrived virtually on the heels of the departing Marines) to claim the rights of first occupancy. Rather, the Tauvela people could have acquired the land only by conveyance from the original owner (the Magalei/Tuia'ana family) or by adverse possession.

As it happens, the Tauvela claim is buttressed both by a sort of conveyance from Tuia'ana and by occupation sufficient to satisfy the adverse possession statute. Shortly after the Tauvelas arrived they were approached by Tuia'ana, who told them they were on his land. They negotiated with Tuia'ana and eventually it was discovered that they were related to him. He then told them they could go on living forever on the land they were occupying. Since 1950 or so he has never disturbed their possession and has supported them in land disputes with other claimants, including Asifoa.

Tuia'ana testified that he regarded his settlement with the Tauvelas not as a license but as an outright conveyance; that although the land remains in some sense Tuia'ana\Magalei land, as far as he is concerned the Tauvelas can register it. This, however, is not the way the land laws work. Because the conveyance from Tuia'ana was not approved by the Governor or the Land Commission, it did not operate to pass title to Tauvela or his heirs. *See* A.S.C.A. §§ 37.0201 et seq.

91

The Tauvela people, however, occupied the parcels they now claim from some time in the late 1940s until about 1973, when a taro patch that had long been maintained by the late Tauvela on the smaller of the two parcels was taken over by Asifoa. This period was longer than the twenty years required for adverse possession by the statute then in force. The Tauvela occupancy was exclusive, continuous, open, and notorious, and it was hostile to a claim of ownership by anyone else --- including the claim that might have been asserted by Tuia'ana or Magalei but which Tuia'ana had renounced.

It is important to notice that the Tauvelas were not occupying the land as licensees of Tuia'ana. Rather, Tuia'ana says he acknowledged the Tauvelas as outright owners of the land and then left them alone for twenty years. Although ineffective as an outright conveyance, this acknowledgment and subsequent non-interference had the effect of allowing the Tauvelas to acquire the land by adverse possession.

We are satisfied that a recent resurvey (Drawing No. 110-15-90) by the Tauvela claimants of their parcel entitled "Fanuaomavaega No.2" (the land in and around the former taro patch, originally designated parcel No. 1) is an accurate survey of this portion of their land. However, this survey cannot be registered because it has never been posted in accordance with the requirements of A.S.C.A. §§ 37.0101 et seq. (Nor is it clear whether the pulenu'u of the Village of Faleniu was present at the survey and gave the required notice within the village.) The original survey of this parcel, the one that was in fact offered for registration in 1984, does not accurately portray either the size, shape, or location of this part of the Tauvela land. Accordingly, the offer of registration is denied.

If, however, the Tauvela claimants wish to offer the new survey for registration --- after retracing it, if necessary, in order to comply with the statutory requirement of notice in the village of Faleniu --- all parties to the present litigation will be estopped from offering any objection. The present parties' claims to the subject land have already been litigated, and as among the present parties, this parcel has been held to belong to the Tauvela claimants.

The other Tauvela survey offered for registration in 1984 does appear to accurately reflect the size and shape of a tract occupied by the Tauvelas since the late 1940s and containing at least one Tauvela house. A surveyor's error --- apparently in calculating or transcribing one of the coordinates of the starting point of the survey, and having the effect of

92

placing the survey about 200 feet west of where all parties believe the Tauvela-occupied area to be --- might not be fatal if it were proved that the field survey itself had been located in the proper place and conducted in accordance with all statutory requirements. The 1984 survey, however, was announced in A'olau rather than Faleniu. The whole of Tafeta has long been held to belong to Faleniu. Although this does not prevent people of A'olau from acquiring land in Tafeta by conveyance or adverse possession, they cannot register such land without giving the required notices in the village wherein the land is located.

Again, however, the defects in the registration do not prevent us from adjudicating the rights of the present parties, who have in fact received notice of the Tauvela claim, filed their competing claims, and fully litigated their claims. In the event the Tauvela claimants should re-offer this parcel for registration (presumably after correcting the surveyor's error and complying with all statutory requirements), all parties to the present litigation will be estopped from offering objections.

Another minor adjustment, on the western boundary, may be necessary before the larger Tauvela tract can be re-offered for registration. This matter is discussed in connection with the Asifoa/Atualevao claim.

### V. The Asifoa/Atualevao Claim

Asifoa Atualevao also came down from A'oloau during the late 1940s or perhaps during the very early 1950s. His occupation of the area around where his houses now are, although interrupted by long absences, was supplemented by the presence of other Atualevao family members.

In 1975 Asifoa and his wife attempted to register a tract of land as their individually owned property. This tract was apparently intended to include the area immediately around the Asifoa houses, as well as a somewhat larger tract of land to the northeast, which had long been occupied by the Tauvela people. Magalei, Tuia'ana, and Oloava Tauvela objected. The Court rejected the Asifoa claim for several reasons: serious technical flaws in the survey, the "considerable merit" of the competing claim by the Tauvela people, and what the Court regarded as inconsistencies in the Asifoas' theory about how the land had become their property. *Atualevao v. Magalei, supra.*

93

Some of the parties to the present case contend that the present Asifoa/Atualevao claim must be denied because it has already been litigated and rejected. In obvious anticipation of this argument, Asifoa has amended his pleadings to claim the land not as his individual property but as that of the Atualevao family. His son Atualevao Sosene Asifoa, the present holder of the Atualevao matai title, has joined in this new claim. Counsel for Asifoa and Atualevao also points out that most of the land unsuccessfully claimed by Mr. & Mrs. Asifoa in 1975 is outside the boundaries of their present claim.

Although Asifoa's change of heart with respect to the true ownership of this land seems at least partly motivated by strategy rather than conscience, it does make his claim far easier to reconcile with the true facts of the case. For reasons we have already stated at length, we reject Asifoa's claim that he was the original occupant of this land. If he or the Atualevao family has acquired ownership, it must be by adverse possession from the Tuia'ana/Magalei people who had owned it at least since 1922. Asifoa himself has left the land on several different occasions, and each of these absences lasted for several years. He has therefore not been on the land continuously for long enough to acquire it by adverse possession. Other members of the Atualevao family, however, including the then-holder of the Atualevao title, were on the land while Asifoa was there and also while he was away. Indeed, it seems clear that Atualevao family members have been present in the area of the Asifoa houses continuously since 1952 at the latest. Although Asifoa himself may have been intending all along to register the land some day in his own name rather than in that of his family, there is no evidence that this intention became public at any time before 1975. The general pattern of occupation seems far more consistent with communal than individual ownership.

The rejection of Asifoa's claim in 1978 was motivated at least partly by the Court's skepticism about the individual-ownership aspect of the claim. The Court also clearly regarded the Tauvela claim over the area including the Tauvela houses as superior to that of Asifoa. Neither of these factors is present in the case now before us, since Asifoa has abandoned not only his claim to individual ownership but also any claim at all to the area around the Tauvela houses. The Atualevao family is therefore not collaterally estopped by the rejection of the Asifoa claim in 1978.

On the merits, we find that the Atualevao family's occupation of the area in the immediate vicinity of the Asifoa houses has been

94

continuous, exclusive, open, notorious, and hostile since 1952 at the latest. They therefore acquired the area by adverse possession from the Tuia'ana/Magalei family no later than 1972. Although Tuia'ana had confronted Asifoa during the early 1950s, just as he had confronted Tauvela, in this case there was no settlement. Tuia'ana went on regarding the land occupied by the Asifoa\Atualevao people as rightfully belonging to the Tuia'ana\Magalei family, but did not assert this position in Court until 1975. By then, however, the Atualevao people had been on the land long enough to perfect their title by adverse possession.

The Asifoa/Atualevao survey is quite a bit larger than the area of their proven adverse possession. The southwestern portion of their survey overlaps the westernmost Tauvela survey. This was the location of Tauvela's taro patch. We find the Tauvela evidence, to the effect that Tauvela cultivated this land on his own account, more convincing than Asifoa's testimony that Tauvela's long occupation was always as Asifoa's licensee. The Tauvela claimants therefore prevail with respect to this area. With respect to the steep slopes in the northern and northwestern portion of the Asifoa/Atualevao survey, there is no convincing evidence of any Asifoa or Atualevao occupation until quite recently. The Magalei/Tuia'ana family, the original owner of the land, therefore prevails in these areas.

We hold that the area of the Atualevao family's proven adverse possession is bounded on the west by the Tauvela tract depicted in Drawing No. 110-15-90; on the south and east by the southern and eastern boundaries of the Asifoa survey; and on the north by the 825-foot contour line. This contour line appears to define as nearly as possible the beginning of the steep slope; it can be seen clearly on Drawing No. 110-15-90, and the depiction in that drawing corresponds to an identical line in the inset portion of the Asifoa survey, Drawing No. 9-15-89.

The Asifoa survey also has a slight overlap on the east with the larger of the two Tauvela surveys. Both parties testified that there is no serious disagreement on the boundary in this area, that their boundary is a line of trees and that the only question is whether the trees themselves are on the Atualevao side or the Tauvela side of the boundary. We conclude that the trees should be the exact boundary rather than being slightly on one side or the other. Each party may have to adjust its survey accordingly before making any new offer of registration.

The Atualevao family is not entitled to immediate registration of any part of the Asifoa survey, because the only notice that was ever

95

given of such registration was given in A'oloau rather than Faleniu and notified prospective objectors of a claim by Asifoa rather than by the Atualevao family. A certificate of registration issued after compliance with the registration statutes is evidence of a title good against the world and therefore can only be issued after strict compliance with the statutory procedures. *See Vaimaona v. Tuitasi*, 18 A.S.R.2d 88 (1991); *Faleafine v. Suapilimai*, 7 A.S.R.2d 108 (1988). That the Atualevao family has not done what it has to do to establish a title good against the world, however, does not prevent the Court from pronouncing judgment with respect to the rights of parties who have had notice of the Atualevao claim and have fully litigated their competing claims. *See Vaimaona*, *supra*. If, therefore, the Atualevao family should offer for registration that portion of the Asifoa survey which has been held in this opinion to belong to them, the other parties to these consolidated cases will be estopped to object.

### VI. Conclusion and Order

Judgment shall issue as follows:

1) Denying the offers of registration by Oloava Tauvela in LT No. 34-85 and by Asifoa Atualevao in LT No. 21-89.

2) Declaring that the 3.0631-acre tract depicted in Drawing No. 110-15-90 is the property of the heirs of Tauvela and his wife Teuila.

3) Declaring that the 7.70-acre tract depicted in Drawing No. 11-11-84, with the stated coordinates corrected so that the western boundary should correspond to a line of trees on the eastern boundary of the Asifoa survey, is the property of the heirs of Tauvela and of his wife Teuila.

4) Declaring that the tract included within the following boundaries is the property of the Atualevao family: Beginning at a point defined by the intersection of the eastern boundary of the Tauvela tract entitled Fanuaomavaega No. 2, as depicted in Drawing No. 110-15-90, and the 825-foot contour line, also depicted in that drawing; thence southeasterly along the eastern boundary of Fanuaomavaega No. 2 to the intersection with the southernmost boundary of the Asifoa survey, Drawing No. 9-15-89; thence easterly and northerly along the various courses of the southern and eastern boundaries of the Asifoa survey; thence northerly along a line of trees, which is along or near the eastern boundary of the Asifoa survey and which is also along or near the

western boundary of the Tauvela tract depicted in Drawing No. 11-11-84, to the intersection with the 825-foot contour line; thence westerly along the 825-foot contour line to the point of beginning.

4) Declaring that the remaining land within the Asifoa survey is the property of the Magalei/Tuia'ana family of Faleniu.

5) Enjoining all parties to withdraw, within the next thirty days, from any land now occupied by them and held to belong to other parties, to remove their crops and any other belongings they may have on such land, and not to go on such land thereafter except by permission of the lawful owner.

It is so ordered.